Case No. 24-2787 from the District of Minnesota, Lea Johnson, et al. v. Freedom Mortgage. Good morning, Your Honors, and may it please the Court. My name is David Chammey, and I represent Samantha and Lea Johnson in this case, in this appeal. Your Honors, the Fair Credit Reporting Act very clearly has a requirement that applies to furnishers like Freedom Mortgage. It requires not only accurate credit reporting, but also complete credit reporting. So the information being reported has to be complete and accurate under 1681 S2A. Under 1681 S2B, which is what gives the Johnsons a private action, whenever an account or information is being disputed, the furnisher, in this case Freedom Mortgage, would have to determine whether the information it was reporting was inaccurate or incomplete. And that's why the vast majority of both district and circuit courts have found that something can be technically accurate, but still materially misleading in such a way that it will have an adverse impact on credit making decisions. What would an accurate one look like? Would it be she tried to pay, but didn't follow the instructions and so didn't pay on time? Or what would it say? So the statute's very clear. If you're unable to verify the reporting, you can stop reporting. Credit reporting is voluntary. So if you can't convey a complete record, you can delete the trade line. You can delete, you can modify the late reporting. See, furnishers have an obligation, a separate contractual obligation to the CRAs, the Consumer Reporting Agencies, to provide them with accurate information. And sometimes there's a struggle for the furnisher to decide, well, what do I do with this? I have to report accurately. And so they just, they typically, what Freedom Mortgage did is say, nope, we reported this as late, our system shows it was late, and we're not modifying the reporting. What I just said would be accurate, and I don't know how it would help your client. I mean, if you said, well, tried to pay, didn't follow the instructions, didn't put the account number, so we treat it as late, that would be accurate. But it would still be materially misleading. How? That's exactly what happened. Well, let me, that is not what happened. Okay. Then tell me what happened. Yeah. That is not what happened. What happened here is, and with all due respect to the district court, I think a plain reading of the letter, the welcome letter, the court went out of its way to find that this letter somehow created binding instructions on the consumers on what needed to be done when a payment was made. Didn't your client admit she should have written the account number on the face of the check? No. Or wasn't that in the record? I mean, you dispute it. Is it not in the record, or do you dispute it? It is not in the record. The client admitted that she included her loan number. There is no acknowledgement that she knew that the loan number needed to be on the check. You will see nothing in the record that says that. Even the reading of the order by the court doesn't say it. The court construes that, but the acknowledgement is, well, why did you, and Ms. Johnson's testimony is, why did you, when she's asked, why did you include this information on a piece of  And she says, well, I wanted to make sure you had the loan number. Not that I understood from your welcome letter that if I didn't, it wouldn't count. Those are two different things. I'm interested to hear what the actual facts are, but I mean, the problem with this is it opens up like a huge exception, because what if somebody claims, I put it in the mail. I swear I put it in the mail. The letter says, well, I never received it. Then do you say, well, it says that they put it in the mail, but we never received it. I mean, I don't know. Well, I think there's some obligations here on the consumer's part that need to be considered. Like with the Johnson's case, Freedom Mortgage, so the consumer has an opportunity to fix their problem, right? You can be late without being 30 days late. That's what happened here, right? Ms. Johnson understood. She had a letter saying, your next payment is due, and oh, by the way, we didn't get your last one. And Ms. Johnson promptly, and Appendix 210 is a recording of this phone call, promptly calls Freedom Mortgage and says, what are you talking about? I'm not late. I paid you. And they say, well, let me look into that. There's an interaction between Ms. Johnson and the representative, and she says, no, I sent a money order, certified funds, cashier's check, money order. That was an obligation that was not part of this welcome letter. She was not instructed. She had online payments set up, and so Ms. Johnson says, well, wait a minute. I've already paid you. How do I fix this? You took away my right to make my payments online. I've reaffirmed the debt, right? I've taken my debt out of the bankruptcy. I've promised to be bound by the contractual obligations. Give me my online access back, and I'll pay this, and the representative says, I can't do that. She says, okay. Well, my payment's late, according to you, and it's not 30 days late yet, so can you make an exception? No, we cannot make an exception. Can you take my payment by phone? The recording is Ms. Johnson is doing everything in her power to make the payment. She sent the payment. It's undisputed she sent the payment. They didn't process it. They claimed they didn't process it because there were 34 other Samantha Johnsons. Sounds reasonable on its face, except how many of those 34 Samantha Johnsons had a payment that was $1,596, or $1,595.12? How many of them were sending certified funds because they were in a bankruptcy, which is the only circumstance in which you'd be sending a money order or a cashier's check to pay your mortgage? How many of them had the same address on the envelope that they mailed the check from their home with her address, that is the property address that the loan belongs to? They had the ability to not only figure out, even if they didn't find the loan number, even if she didn't write it on a piece of paper, which is a question of fact, even if she didn't write it on the envelope. We know Ms. Johnson, on May 23rd, when she calls in before she's late, tells the representative, I gave you my loan number, I included it. This isn't, while she's represented by counsel, this isn't responding to interrogatories, this is on May 23rd of 2020, calling in to Freedom Mortgage and saying, I did provide the loan number, and it's important, this idea that Freedom Mortgage said the loan number needs to be on the check. At 3 minutes and 56 seconds, the representative asked her, did you include your loan number? She didn't say, did you write your loan number on the check, because that would explain why we might not have processed it. The welcome letter very clearly says, at Appendix 88, if you make payments by check, make them payable to Freedom Mortgage, and include your loan number, not on the check. The on the check is in another section that says, oh, and if you haven't received any statements from us yet, and you're going to send us a check, write your loan number on the check. They know where they want the loan number on the check. If you're not including some separate document to identify your loan number because you haven't received your statements yet, make sure your loan number is on the check. Essentially, what you're arguing now, though, is that the instructions provided were ambiguous, right? I don't think they were ambiguous at all. I think you had to, when we argued... Was any of this argument made to the district court? Absolutely. We argued that the welcome letter didn't require that at all, and we don't think the welcome letter requires that at all. The district court, in my opinion, did some mental gymnastics to read different portions of this welcome letter together and came to a decision that the check was non-conforming. So we couldn't have argued it to the district court because that argument was created in the order by the district court, right? The district court found something that we don't think the letter says, that there was some requirement based on this letter. And if the court were to look at this letter, if this panel looks at this letter, this letter gives multiple options for payments, none of them are certified funds. The certified fund requirement was created by Freedom Mortgage after the fact based on my client's filing of bankruptcy. So going back to Judge Strauss' question, what would an accurate report look like in this case? In my opinion, the reporting is patently inaccurate. They made the... No, no, I got that. But what would an accurate report look like? They paid on time. They paid on time. The check was received by Freedom Mortgage on time as it was required. A loan number, whether the loan number was included or not is a question of fact. But my client on May 23rd, long before litigation, long before credit reporting issues, called in and said, I provided you the loan number with my check. And then made multiple efforts to pay that day. Do we need to adopt the accurate but misleading standard in order to rule for you? Or could we just say... I mean, I hear you suggesting that it was just inaccurate, period. It was inaccurate, period. There could be no set of facts that I can think of where a consumer does everything in her power to make the payment on time with the initial writing of the check, sending it on time, mailing it on time. There's no question it was received on time. But then do the extra, above and beyond, to call Freedom Mortgage, to ask for online ability to pay, to ask them to take the payment right then and there by phone. And then for Freedom Mortgage to reject those and then say, oh, and by the way, even though we required you to prepay certified funds, even though we did that, now you got to figure out how to make not only the payment that we received and didn't cash, we got to make the next month's payment, too. And if you don't, we're going to report you as late. And that's what happened here. So we think it was patently inaccurate to report her as late. We think you don't need to decide whether it was materially misleading. However, I don't know how you can read the FCRA's completeness and accuracy requirements and requirement that they correct incomplete reporting or inaccurate reporting and say, well, there aren't circumstances where something can be materially misleading. How could you have a set of facts that could be any more materially misleading? Now, you don't have to find that, but the vast majority of circuits that have considered it do say it's a factual question, whether something is materially misleading. And if it is, the facts will tell that story. I see that this is the kind of case that tells that story. How are you going to report this consumer who was diligent in reaffirming her debt, making her mortgage payment on time, calling in and attempting to pay it on the phone, asking for online access to make the payment again, and then say, we're going to reject all of those things, and then we're going to report you as late. And that's what happened here. There are a number of other factors. For example, Appendix 142, Bell Bank representative testifies that Freedom Mortgage didn't send them the check back until May 29th. This is six days after my client calls in. And that's when my client runs to the bank, reissues the money orders or the cashier's checks, and sends them back to Freedom. And from what we know is Freedom didn't cash them until June 9th. That doesn't mean Freedom didn't have them before then. So I've got a lot of problems with the impact of the district court's decision on my clients specifically, but also on consumers more broadly, because it is basically saying, what you do doesn't matter. If they received the check on time, had the loan number, and just didn't deposit it, they could report you as late. And that's simply inconsistent with the spirit and the technical plain language of the statute, which requires more on the part of furnitures. I'm going to reserve the rest of my time, Your Honors. Thank you, Mr. Shammy. It pleases the Court, Jeremy Rogers for Freedom Mortgage Corporation. I think the unfortunate reality with this case is that the goalposts have moved. Initially, and I say this because from Freedom Mortgage's perspective, you have to look at what information was available to Freedom Mortgage at the time. Freedom Mortgage got this check, this cashier's check that was dated in April 2020. We assume they got it. There's no record evidence of that because the check itself only said, or the cashier's check only said, Samantha Johnson as the remitter. No address, no loan number, nothing by which Freedom could take this check with the name of some 34 different people that it services loans for and know which account to put it on. But the phone call, when did the phone call occur? The initial phone call occurred on May 23, 2020. So weren't all those problems potentially alleviated during that phone call? I'm not sure I understand that. Well, in other words, your client had all the information you just said that was lacking, right? I mean, she called, she said, I sent in the check. She had her account number. Didn't your client at that point have the information necessary to resolve the matter in advance of the deadline? Quite the opposite. In fact, the problem with that phone call was that it exacerbated the issue because the information provided by Ms. Johnson in that phone call said that the check was, first of all, it said it was a money order, which it wasn't. It said that the check had been cashed. It hadn't been cashed. So Freedom did look in its records for cashed checks and found no evidence that it had received this check that had been cashed. What else is Freedom supposed to do at that point? You've got someone calling saying, trust me, I sent you this money. You cashed it. No, we didn't. When did it come to light that the check was not cashed? Or when did your client become aware of that and needed to be returned? Well, we don't know. All we know is that from my client's perspective, it has no ... In the record, there's nothing that says that they received the check. What we know is in May of 2020, we got no payment. And we get a phone call from Ms. Johnson on the 23rd saying, trust me, I made a payment. It was a check that was cashed and she didn't provide the correct remitter information on the check. She provided an incorrect batch number on that phone call that doesn't match anything in the record and certainly not that cashier's check. So aside from being unhelpful, it was the opposite of helpful. Am I hearing you correctly that the check was never found, that it just mysteriously disappeared? I'm just trying to figure out what happened to the check. The check ended up being returned back to Bell Bank. From your client. From my client because we apparently didn't know who it belonged to. That's the whole point. Freedom Mortgage Corporation is not in the business of turning away money. We want to get these checks and apply them to the correct loan number. That's why we have the information in the welcome packet that says put your loan account number on the check. It says that in a couple of places. But in other places, it says include, right? There's also a process for putting a coupon in that would have the loan number on it. Right in the barcode. Yeah. So was the argument made that the instructions were ambiguous? And if so, it seems to, and if one were to agree that the instructions were ambiguous, we'd have a fact issue, wouldn't we? She says she included it, you know, on a separate piece of paper or something. The argument was not really made that the instructions were ambiguous. The factual contention came at the last minute that, oh, Ms. Johnson testifies, oh, yeah, I did put a piece of paper in with that cashier's check that had the information on it. I just now remembered that. Notwithstanding the fact that it's not alleged in the complaint, it wasn't put in the initial discovery responses, it certainly is not alleged or stated in the dispute letter to the CRAs. And that gets to another issue, which is the starting point for a furnisher's obligation to investigate a dispute is the letter, the information that's provided by the CRAs. And here, the CRAs provided very scant information. The only thing was the letter from Ms. Johnson, both Ms. Johnsons, saying, please change the report. I've always made all of my payments on time. Well, what do we do with that? There's nothing in that letter that says, and here's what really happened, or here's a copy of the cashier's check, or here's why I really tried to pay and it didn't go through. All it says is, I've always paid on time. Well, Freedom Mortgage, at that point, is left to look at its information. Very clearly, that payment was not on time. The payment was made in a May check that was received and deposited in June. The payment that we're here arguing about is not that May payment. It's the cashier's check that was returned to Bell Bank that we have no record of other than after this litigation being instituted. There are all kinds of cases where the courts, and we've cited many of these, the courts say, well, a furnisher's obligation, or the reasonableness of its investigation, has to start with the information provided. What do you want us to do differently here? I think this gets to the heart of the question you opened with, Judge Strauss, which is, what would be a correct, accurate report here? There was never a suggestion by the consumers in the dispute that, here's what we really want. We really want you to give some more context to this missed payment. We really want you to provide some more information about how we tried, but failed to submit it. The Supreme Court didn't address the adequacy of the information in the investigation. Is that correct? Correct. They ruled on the accuracy of the report? That's correct. And we've argued for alternative affirmance of the decision based on the reasonableness of the investigation. But I think the point from the statute is the same, or similar, which is the accuracy question also has to start with the consumer's dispute. If a consumer sends a dispute and says, I've always made all my payments on time, then they can't then, a year later, sue and say, well, I said I made all my payments on time. You should have reported that I here tried with this cashier's check and because I didn't have the loan number, it didn't go through. You should have given more context. How are we to know that? That's not in the dispute. And there are cases that say, not only does that make it a reasonable investigation as a matter of law, but what are we talking about the accuracy of? The accuracy of the report here is that the payment was more than 30 days late. And that's absolutely true. It's accurate, notwithstanding that the dispute letter only says it's not accurate. So that's why I say the goalposts have moved. We're now talking about something that wasn't addressed in the dispute letter at all. And it wasn't addressed in the complaint in this lawsuit. If you read the complaint, I think the word accuracy or inaccuracy or some derivation of that word, I tried to count last night and I stopped after about 50 times that that word appears in the complaint. But the notion of completeness or materially misleading, though technically accurate, I don't see that in the complaint here. It's a moving goalpost. We might still have a case here, but I just wonder now that all the information has come to light, why hasn't Freedom Mortgage gone in and said, well, geez, at least I know now that you've paid on time. So we're going to go ahead and change that. The circumstances here are very unique. I mean, maybe we still have damages, whatever, but I'm wondering why we haven't gotten to that point yet. Yeah, it's an excellent question, and I've got to confess to you, Your Honor, that I don't know the answer to that. And frankly, I don't know, and the record doesn't reveal, whether that's been done or not. I mean, I don't mean to be flippant about it at all, but for all I know, that report is gone now or is different. I just don't know. I don't want to represent something inaccurate to the court. The point being, under the statute, the obligation of the furnisher here starts with that dispute letter. And I know there are cases that say you don't cabin and try to narrowly construe that letter. Let's be fair. I get that. But to say, I've made all my payments on time. Please change the report. And then for that to then translate now today to, well, okay, I did have to make another replacement payment. You don't have a record of my cashier's check that was submitted. But now that we're in litigation, trust me, this is what should have happened. I mean, that kind of Monday morning quarterbacking is not only unfair, it is frankly impossible of a standard to hold furnishers to. Essentially, a standard of, I think we use the word clairvoyance in our brief, to know what really is the dispute here. And I understand that there are cases that say, in other circuits, that courts look beyond just pure technical accuracy and look to materially misleading. But when you look at the statute, it talks about accuracy and completeness. You can construe that more broadly, as other courts have, but you can't do that in a vacuum and say a dispute about timely payment somehow translates to something more or different or you should have said something more. I don't think there's a single case that's been cited to this court in any of the briefs where anything quite like this has happened, where there's been a dispute letter about timely payment and nothing about this sort of law school hypothetical about the cashier's check having the missing information, et cetera, and then the phone call going off track that is anything close to what we're dealing with here. But the closest case, from my perspective, and certainly the closest case in the Eighth Circuit is the Anderson case, which the district court relied on here. And frankly, that case is a case that was probably closer for the question of whose fault it was that the payment wasn't processed or received on time because there the furnisher received a check, credited the check all on time, then lost the check through no fault of the consumer, and then by the time the furnisher got around to getting a replacement check under that procedure and attempting to deposit it, time had elapsed and the consumer had closed that account, and so there were no fines. And what the court held was, although I think we might all say, yeah, maybe it would be nice, maybe a consumer would appreciate a more fulsome narrative about the circumstances that led there, but accuracy is accuracy and the payment didn't come through and the report was accurate that the payment was not timely. Here, the facts aren't as close as that. There was no fault. At least we submit there was no fault. As long as there's any evidence of fault by Freedom that the receipt of that cashier's check was done incorrectly. At most, what the suggestion now has become is that, well, the instructions in the welcome packet or in the monthly billing statements were less than perfectly clear. I submit that that's inaccurate. I also submit that that wasn't really raised to the trial court, but I also submit that the record does, in fact, contain Ms. Johnson's deposition testimony. It's at the appendix page 264 and 265, which I believe are pages 33 and 34 of her deposition, and she specifically testified as follows. This is on page 265 of the appendix. Okay, so you understand at that time that the cashier's check should have had the loan number? Answer, correct. And this is in part what the district court relied upon to say or at least imply that any suggestion of an ambiguity argument really goes out the window there. I mean, the point is the consumer here knew and testified she knew that the loan number should and was required to be on the check, and it wasn't. But ultimately, this court has really two options to affirm the lower court. Affirm on the rationale of the district court on accuracy, which I submit would be a correct ruling, but the completely legitimate alternative basis to affirm, as the court did in the Adai case that we cite, both the district court level and the, I think it was a per curiam opinion of this court, to affirm on the alternative basis of the investigation. Based on the information provided, the limited information provided by the consumer in the dispute, no question that the investigation was reasonable. That's exactly what happened in the Adai case, where the lower court held accuracy. This court didn't say the accuracy argument was incorrect, but nonetheless affirmed on the alternative argument. So either or both of those arguments would support affirming the lower court's decision here, and I submit that respectfully request the court affirm the judgment. The payment statements instructions talk about to avoiding delays, make your check payable to Freedom Mortgage, and include your loan number. In your brief, you say that's a phrase that's sort of within the context of another sentence that makes it clear. What's that other sentence that makes it clear that the loan number has to be on the check? If I understand Your Honor's question correctly, what I'm referring to, I think we're on the same page literally, is the appendix page 88. I have 98 down, but I could be wrong. Well, there may be a separate one on 98. On 88, it's that welcome letter that we've talked about. And about two-thirds of the way down, there's a section that says contact and payment information. And the sentence that we're referring to says, starting 11-29-19, please make checks payable to Freedom Mortgage Corporation, per in, include your mortgage loan number, then it has the number, close per in, and send to, then it's got the address. That's one sentence that says, send your check here and put your loan number on it. No, it doesn't say that. It says include. It says two different things. Right. Write your check to us, include your mortgage loan number. Well, what else are we referring to in that sentence? It certainly doesn't say include your loan number on a separate scrap piece of paper or include it in your thoughts. But you did have a coupon. There is also a coupon, and that could have been submitted with the barcode and the loan number on it. The problem here is, neither of those happened. So for a consumer who testified, I knew the loan number should have been on the check, to do neither of those things and suggest ambiguity is the excuse there. Okay. So you don't have anything better than include. You think include necessarily means write it on the check. Well, there's the following page. I do, Your Honor. There's a second page, page 89 of the appendix. It goes on to talk about the new billing statement. It says be sure to include your mortgage loan number. It has the number on the check. That's page 89 of the appendix. Okay. And I know my time is out, but I'll close by saying I know this can be a little bit dense, but it's not. We shouldn't lose sight of the common sense of this, which is Freedom Mortgage Corporation, which is servicing loans for 34 different people named Samantha Johnson, has to have a way to know when it gets a check that's not even in the exact amount. It's 88 cents off from the exact amount, what to do with that. And we didn't have that information here. Very well. Thank you. Thank you, Your Honor. So, Your Honor, there's a few points. As counsel quoted Ms. Johnson's testimony, he quoted it accurately and then added that she understood that the check number needed to be on the check. That is not consistent with her testimony. She said, I realized that the check didn't have the loan number on it and I wanted to make sure you knew how to apply it, so I included the loan number with the check. That is not the same thing as saying I understood from the welcome letter there was a check number that was required on the check. That is inconsistent. And, yes, I agree that the district court made that leap, but that leap is not the only understanding of that testimony. It is not the only way you can read that testimony. And, in fact, all you have to do is go back and listen to the recording. When she calls in before there was a lawsuit, before there were interrogatories, before there was drafting of a complaint or a dispute letter, she says, I gave you, I included the loan number with my check. And the representative doesn't say to her, was it on the check? Because that is not required. This is a litigation manufactured argument. It only occurred when the judge read the welcome letter to make, to require the loan number to be on the check. It is not, you cannot read the welcome letter and come to that conclusion naturally. It requires someone to put it together and say, well, let me read this sentence on page one and add it to this sentence on page two and then talk about this no correspondence. Correspondence is something we don't want you to send to us at the payment center because we're not going to respond back to you. Can I ask you about ambiguity? I think Judge Grunder may have asked this before, but maybe not the where. Where in the record did you raise the ambiguity argument to the district court? I didn't see it. No, the word ambiguity isn't there because we argued that the letter was followed, meaning she read the letter a certain way that did not require the check number to be, or the loan number, I'm sorry, the loan number to be written on the check. It is implicit in that belief that the letter was read correctly and followed, that if you say no, the letter required something else, well then you are now reading it differently than I am, and therefore it is ambiguous. Okay. Where did you raise that argument? At least I can go back and look. Do you remember? Did you raise that in one of your motions? We definitely cite to it in our brief, Your Honor, that the argument all along was that she wasn't required by the correspondence from Freedom Mortgage to write the loan number on the check. That has always been our position. It's why we said her payment was timely and it was accurate. It's been the crux of our argument for accuracy all along. So that would be in your response to the summary judgment motion? Correct. And it would be in our brief where we cite to it multiple times on appeal and in our reply. Well, I'm more interested in before the district court. Absolutely, Your Honor. Before the district court, we argued all along that the payment was timely. She complied with the requirements of Freedom Mortgage. And these are the only requirements because Freedom Mortgage isn't her lender, wasn't her original servicer. They only came into the picture just months before the bankruptcy, and then changed the game. And this is, I think, a very important point. This welcome letter is pre-bankruptcy. Everything they instructed her to do after that is verbal. Hey, why can't I make my payment? You discontinued my online access. Sorry, now you have to do it a different way. Send certified funds. Thank you. Thank you, Your Honor. The court appreciates both counsel's appearance and argument and briefing. The case is submitted and we'll issue an opinion. Thank you, Your Honor. The court will be in recess for 10 minutes, and then we'll come back and do the final two cases.